

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

MWG:ED'A
F. #2025R00465

August 22, 2025

By ECF and Email

The Honorable Vera M. Scanlon
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Alejandro Santos
> Criminal Docket No. 25-258 (NRM)

Dear Judge Scanlon:

The government respectfully submits this letter to request an order of detention with respect to the defendant Alejandro Santos, who is scheduled to appear for arraignment before Your Honor later today. The defendant is charged by indictment with one count of transportation of child sexual abuse material, in violation of Title 18, United States Code, Section 2252(a)(1); and one count of possession of child sexual abuse material, in violation of Title 18, United States Code, Section 2252(a)(4)(B). At the time of his arrest, Santos was a teacher's aide at P.S. 188, a school for disabled children in the Bronx. For the past twenty-one years, the defendant has worked with hundreds of children with moderate to severe disabilities, including some non-verbal students. As further described below, the defendant poses a significant danger to the public, particularly our community's most vulnerable members, and is a flight risk given his strong, familial ties to the Dominican Republic. There is no condition or combination of conditions can reasonably assure his appearance or the safety of the community. Accordingly, the defendant should be detained.

I. Background

    A. The Offense Conduct

On July 15, 2025, the defendant arrived at John F. Kennedy International Airport on a flight from the Dominican Republic. United States Customs and Border Protection ("CBP") officers stopped the defendant for a secondary inspection based on a CBP Lookout. The CBP Lookout advised law enforcement that the defendant was a high risk for possession of child sexual abuse material. During the secondary inspection, Santos provided his phone and passcode to CBP officers. During a brief manual inspection of the defendant's cell phone, law

enforcement officers observed at least 100 videos and images depicting the sexual exploitation of children, including one approximately video showing an adult man pushing an infant girl's legs back, exposing her vagina and anus. The video also showed a purple-colored sex toy protruding from the baby's anus, while the baby cries. The second video was approximately 11 minutes and 44 seconds long and showed an adult male digitally and penally penetrating a prepubescent girl's genitals. A third video was approximately three minutes and 26 seconds long and showed a pubescent girl nude from the waist down with her legs splayed out while a white dog appears to lick the girl's genitals.

After conducting a brief manual review of the defendant's cell phone, law enforcement asked Santos about his background, recent travels and employment. The defendant informed law enforcement that he worked for the New York City Department of Education ("DOE") for 23 years, and, for the last 21 years, he has worked at a public school in the Bronx for disabled children. After being advised of his Miranda rights, the defendant waived those rights and agreed to speak with officers. The defendant also consented to the agent's search of his cell phone and provided his passcode. During the interview, Santos used facial recognition software on his cell phone to open a fake calculator ("VP") mobile application. Inside of the VP application, law enforcement officers observed approximately hundreds of hidden files depicting the sexual exploitation and abuse of children, including toddlers and infants. The files appeared to have been downloaded and saved between January 2024 and May 2025. Santos told the agents that he saved CP ("child pornography") videos from Telegram into the VP application. In the camera roll application on Santos' cell phone, intermixed with sexually explicit depictions of minors, law enforcement officers observed photographs of clothed children in a classroom and in other school settings. Some of the children depicted in the photographs appeared to have physical disabilities.

On July 24, 2025, the Honorable Peggy Kuo, United States Magistrate Judge, issued a warrant authorizing the search of the defendant's cell phone. See 25-MC-2817. Review of the phone pursuant to the warrant is ongoing, but law enforcement agents have already observed thousands of photographs and videos depicting the sexual abuse of children as well as text messages and chats demonstrating suggesting the defendant's purchase and receipt of child sexual abuse material from unidentified individuals through the internet.

B.  Procedural Background

On July 15, 2025, agents with the Department of Homeland Security – Homeland Security Investigations arrested the defendant at JFK Airport. The next day, on July 16, 2025, the defendant was charged by complaint with possession of child sexual abuse material, in violation of Title 18, United States Code, Section 2252(a)(4)(B). See ECF No. 1. Later that same day, the defendant was arraigned on the complaint before United States Magistrate Judge Cheryl L. Pollak.

At the bond hearing, the government argued for detention, but the defendant was released on bond over the government's objection. The defendant was released on a $200,000 bond, secured by three suretors, including the defendant's sister and brother-in-law, retired investigators with local District Attorney's offices. The defendant's bond also included the

mandatory Adam Walsh conditions of release, including a curfew, electronic monitoring, a prohibition on contact with unsupervised minors, including his own children, a prohibition on going to locations frequented by children such as schools, including the school where Santos previously worked, and a prohibition on using any internet-capable devices unless they are identified by the defendant to Pretrial Services and are monitored by Pretrial Services. See ECF No 5 ("Release Order").

On July 17, 2025, Pretrial Services filed a Violation Memorandum informing the Court of inconsistencies in statements made by the defendant regarding his residence. Before his arraignment on the complaint, Santos informed Pretrial Services that he lived alone in an apartment in the Bronx. See Pretrial Services Report dated July 16, 2025. During the defendant's post-release interview, however, the defendant told Pretrial Services that he resided with his wife and two children, ages 13 and 18, in the Bronx. Based on the post-release interview, Pretrial Services directed the defendant to reside at a residence in compliance with his bail conditions. The defendant's sister and brother-in-law, retired law enforcement officers and two suretors on the defendant's bond, agreed to permit the defendant to reside with them in Scarsdale, New York. The defendant's supervision was transferred to the Southern District of New York ("SDNY").

On July 28, 2025, a bail violation hearing was held before Judge Cho. Before the hearing, the government spoke with the defendant's wife, who claimed she moved back in with the defendant on the day he was arrested, which the defendant claimed to be unaware of, when he was first interviewed by Pretrial prior to his arraignment. Judge Cho clarified that the defendant was required to undergo psychiatric evaluation to determine whether he posed a danger to his own biological children before he could have unsupervised contact with them.

On July 30, 2025, Pretrial Services officer informed the undersigned and the defendant by email that the SDNY Pretrial Officer assigned to Santos visited the defendant at his sister and brother-in-law's home in Scarsdale. During this visit, the SDNY Pretrial Officer discovered that the defendant was living directly across the street from a school. Pretrial Services again told the defendant to find a residence in compliance with his bail conditions.

The defendant has since relocated to his niece's home in Yonkers, New York. On August 20, 2025, the SDNY Pretrial Officer assigned to Mr. Santos informed the undersigned that the defendant was continuing to reside at his niece's residence in Yonkers. However, the defendant had recently reported that he was working as a home health aide at his uncle's home, which is also located next to a middle school.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., the court must consider whether the government has shown by a preponderance of evidence that a detention hearing is warranted under § 3142(f). The Government can meet this burden by showing either that the charged offense falls within a category of crimes set forth in § 3142(f)(1), or that the defendant poses a serious risk of flight or obstruction of justice. United States v. Watkins, 940 F.3d 152, 158 (2d Cir. 2019).

If a detention hearing is warranted, federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Whether detention is sought on the basis of dangerousness or risk of flight, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense is a crime of violence, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012). Under the Bail Reform Act, the government may proceed by proffer, and "[t]he rules of evidence do not apply in a detention hearing." Ferranti, 66 F.3d at 541-42.

Where, as here, a defendant is charged with transportation of child sexual abuse material, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight. Id. Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider. Mercedes, 254 F.3d at 436.

III.    The Defendant Is a Danger to the Community and Presents a Serious Risk of Flight

The nature and circumstances of the offenses charged in the indictment and the weight of the evidence strongly support detention. As a general matter, there can be no doubt that the transportation and possession of child sexual abuse material harms children. See Paroline v. United States, 572 U.S. 434 (2014). Merely possessing materials that depict the sexual assault and exploitation continues the victimization of the children depicted in these photographs and videos, which are in essence, crime scene images. Possession of photographs and videos of abuse, alone, fosters a market for more abuse. See, e.g., United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted))."Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it

4

proliferating through the new medium of the Internet." United States v. Williams, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," New York v. Ferber, 458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, see Osborne v. Ohio, 495 U.S. 103, 110 (1990).

   Here, in particular, the defendant is charged with possessing and transporting thousands of videos with shocking and disturbing content, including the rape of infants and toddlers by adults. The defendant's conduct of viewing videos involving the abuse of young children, as if they were objects and not human beings, is strong proof of the risk the defendant poses to the community if released.

   In addition to the defendant's extensive collection of videos and photographs depicting the sexual exploitation of children, the defendant admitted to owning and purchasing child pornography, and even aided law enforcement's search of his cell phone, noting during the interview, that he "has nothing to hide." The evidence is overwhelming of the charged offenses. Furthermore, since the indictment was returned last week, law enforcement officers have also reviewed the defendant's text messages and chats regarding the purchase and receipt of child exploitation material, which suggest that the defendant had extensive involvement in the purchase and receipt of such material since at least 2016.

   Notably, at the time of the defendant's arrest, he was a New York City Department of Education educator tasked with the teaching and safekeeping of our city's most vulnerable students. To be clear, at this stage of this investigation, there is no evidence of hands-on abuse of children. However, there is evidence that the defendant accessed and viewed sexually explicit content involving minors during school hours. An individual who is sexually attracted to children has no business working in a school where he has unfettered access to vulnerable children, some of whom may be unable to comprehend or report potential abuse by virtue of their disabilities.

   Additionally, the defendant poses a significant risk of flight if released. The offenses with which the defendant is charged carry significant penalties. The transportation offense carries a statutory mandatory minimum of five years' imprisonment and a statutory maximum of 20 years. 18 U.S.C. § 2252(b)(1). The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

   Further, the defendant has significant, familial ties to the Dominican Republic. In fact, when the defendant was stopped at JFK airport on July 15, 2025, he was returning from visiting family in the Dominican Republic. The defendant also appears to have the means and familial support to permit him to flee the United States. Notably, the defendant's sister and brother-in-law are investigators for local District Attorney's Offices who possess additional law enforcement knowledge and experience which could aid in the defendant's flight.

5

Finally, since the defendant was released on bond on July 16, 2025, there have been significant changes to the circumstances in this case warranting reconsideration of the defendant's bond.  First, when the defendant was initially charged by complaint, the scope of the sexually explicit content on the defendant's cell phone was limited to 50 photographs and videos.  At this point, while the search of the defendant's cell phone remains ongoing, law enforcement has now determined that the defendant possessed thousands of sexually explicit photographs and videos involving minors on his cell phone.  Second, at the defendant's detention hearing following his arraignment on the complaint, the defendant was charged only with one count of possession of child sexual exploitation material, in violation of 18 U.S.C. § 2252(a)(4)(B), a charge without a mandatory minimum prison sentence.  18 U.S.C. § 2252(b)(2).  The indictment now charges the defendant with an offense which carries a statutory mandatory minimum prison sentence of five years and a statutory maximum of twenty years.  For an individual with no criminal history, a five-year prison sentence is a very significant and serious sentence, which drastically increases the defendant's likelihood of flight.  Furthermore, now that the defendant has been charged with transportation, there is a rebuttable presumption of detention that the defendant must overcome to warrant his release on bond.

IV.     Conclusion

For the reasons set forth above, the defendant poses a significant danger to the community if released pending trial and has strong incentives to flee.  No condition or combination of conditions will reasonably assure the safety of the community and the defendant's continued appearance before the Court.  Santos should, therefore, be detained.

                Respectfully submitted,

                JOSEPH NOCELLA, JR.
                United States Attorney

By:   /s/
                Elizabeth D'Antonio
                Assistant U.S. Attorney
                (718) 254-6416

cc:     Daniel McGuiness, Esq. (by email and ECF)
       Clerk of Court (by email and ECF)